| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| | § | |
| **VS.** | § | **CASE NO. 1:15-CR-2** |
| | § | |
| | § | |
| **TROY MARTIN JONES** | § | |

## REPORT AND RECOMMENDATION
## TO UNCONDITIONALLY DISCHARGE DEFENDANT

On November 24, 2015, the undersigned magistrate judge conducted a hearing pursuant to 18 U.S.C. § 4243(f) to determine whether the Defendant, Troy Martin Jones, should be unconditionally released from custody following his plea of not guilty by reason of insanity.

## I. BACKGROUND

Jones was charged in a complaint dated September 14, 2012, for a violation of 18 U.S.C. § 115 (Threatening a Federal Official). (Dkt. No. 1.) On September 19, 2012, the undersigned ordered that the Defendant, Troy Martin Jones, be committed to a federal medical facility pursuant to 18 U.S.C. § 4241, where he was to be examined pursuant to the provisions of 18 U.S.C. § 4247(b). (Dkt. No. 10.) On September 25, 2013, a psychiatric report was filed with the court, in which evaluators asserted that Jones was not competent to proceed to trial. (Dkt. No 15.) The evaluators believed that Jones' competency could be restored through treatment with antipsychotic medication, but that Jones "adamantly refused" psychiatric medication. Thus, the medical facility requested involuntarily treatment in accordance with Sell v. United States, 539 U.S. 166, 181 (2003). (Id., p. 1.)

On January 7, 2014, the court held a Sell hearing to determine whether to order involuntary

psychiatric treatment. The Defendant appeared in person and his medical providers appeared via video conference from their respective institutions. A threshold issue of the hearing was Jones' unwillingness to voluntarily submit to treatment of his schizophrenia with psychotropic medication, which the doctors agreed would likely render him competent to stand trial. While the report indicated that Jones "adamantly refused" psychotropic medications, the physicians who testified at the hearing were unable to specify the efforts made to allow Jones the opportunity to voluntarily submit to treatment (*i.e.*, how many times was he offered the medicine). Therefore, on January 13, 2014, the undersigned issued an order recommending that Jones be found not competent to stand trial and recommitting him to the custody of the Attorney General for evaluation and treatment and to determine if there is a substantial probability that Jones will attain the capacity to permit his case to proceed. The Order also required that Jones' treating physicians offer him an opportunity to voluntarily take psychotropic medications every day for fifteen (15) consecutive days and report back to the court whether a need for involuntary medication remains. (Dkt. No. 17.)

Jones' treating physicians submitted a report to the court on March 24, 2014, wherein they confirmed that Jones submitted to voluntary medication. (Dkt. No. 19, p. 3.) On June 24, 2014, Jones' treating physicians submitted another report in which they conclude Jones remains incompetent to stand trial, but the doctors "believe[d] there [was] a substantial probability his condition will continue to improve and he will be restored to competency within the foreseeable future." (Dkt. No. 20, p. 8.) Therefore, on July 1, 2014, the undersigned entered an order committing Jones for further hospitalization to determine whether he will attain the capacity to permit his trial to proceed, in accordance with 18 U.S.C. 4241(d). (Dkt. No. 21.)

On December 9, 2014, Jones' doctors submitted a report wherein they opine that Jones had been restored to competency such that he exhibited an adequate factual and rational understanding

of the charges against him and could participate in the preparation of a defense in his case. (Dkt. No. 22, p. 8.) Accordingly, the undersigned held a hearing on December 18, 2014 to determine Jones' competency, and ultimately issued a Report and Recommendation that Jones be found competent (Dkt. No 27), which was adopted by Chief Judge Clark on January 14, 2015 (Dkt. No. 31). On January 21, 2015, Jones appeared before the undersigned and entered a plea of not guilty by reason of insanity. The undersigned accepted Jones' plea, and issued a Report and Recommendation that Jones be committed to a Federal Medical Center for the Federal Bureau of Prisons so that he can be evaluated to determine whether his release would create a substantial risk of bodily injury to another person or serious damage of property of another due to mental disease or defect, citing 18 U.S.C. § 4243(a) and (b). (Dkt. No. 38, p. 3, adopted by Dkt. 39 on February 24, 2015.)

On October 19, 2015, the court received the final forensic evaluation and report for Jones, the content of which is discussed in further detail below. (Dkt. No. 43.)

## II. Medical Findings

Dr. Wadsworth signed Jones' psychiatric report dated October 19, 2015, and ultimately concluded that "Mr. Jones' unconditional release to the community would not pose a substantial risk of bodily injury to another person or serious damage to the property of another." (Id., p. 9.) In reaching this conclusion, Dr. Wadsworth first discussed the procedural history of Jones' case, as well as relevant background and personal information. Next, he discussed Jones' treatment and progress under medication. Dr. Wadsworth reported that Jones remained compliant with his medication during the relevant reporting period, and eventually stopped fantastical references relating to his perceived harassment by "The Masons." (Dkt. No. 43, p. 5.) Dr. Wadsworth reported that Jones indicated he will reside independently in Santa Rosa, California, if released, and that he does not have plans to follow-up with medical treatment, but will agree to treatment if it is recommended.

(Id.)  The report states that Jones has been diagnosed with Schizophrenia, "currently in partial remission," and "characterized by the presence of delusions (erroneous beliefs that remain fixed), hallucinations, disorganized speech or behavior, and the presence of negative symptoms (diminished emotional expression) for at least six months."  (Dkt. No. 43, p. 6.)

In response to the Court's order to evaluate Jones pursuant to 18 U.S.C. § 4243, a Risk Assessment Panel was convened on September 22, 2015.  (Dkt. No. 43, pg. 6.)  Members of this Panel included the Chief and Deputy Chief of Psychology Services at the Federal Medical Facility in Butner, North Carolina.  (Id.)  The panel noted that factors likely to elevate Jones' risk of violence are limited to major mental illness associated with verbal threats, limited social support, and questionable feasibility of release plans in mitigating potential for relapse of mental condition, but that on the other hand–the instant offense is the first time Jones made a threat and there is no record that he ever engaged in any overt violent acts.  After consideration of the relevant risk factors, it was the consensus of the panel that Jones' unconditional release would not pose a substantial risk of bodily injury to another person or serious damage to the property of another as a result of a mental disease or defect.

The forensic evaluation states:

 "[i]t should be noted that whether a person will engage in future violence is a function of a variety of factors, including, personal disposition, and anticipated situational variables, keeping in mind that not all potential circumstances will be known in advance.  Although consistently accurate predictions of future dangerousness cannot be conclusively made by mental health professionals at the time, it is possible to estimate relative risk by considering several well-researched historical and situational correlates of future violence.

(Dkt. No. 43, p. 6.)  In weighing these factors, Dr. Wadsworth employed the HCR-20 (version 3) assessment, which is a comprehensive set of professional guidelines for the assessment and management of violence risk that embodies the structured professional judgment model.  (Id.)

Applying this model to Jones's factors for risk of violence, Dr. Wadsworth concluded that Jones "was considered to be a low risk of bodily harm to others or property."

The report states that Jones has a history of leaving threatening messages to a Coast Guard employee. In the instant offense, Jones allegedly left two messages for Robert A. Swift, a retired Pay Technician who oversaw Mr. Jones' retirement account. In the initial message, Jones threatened Caucasians and in a second message he threatened to kill Caucasian Coast Guard members. Dr. Wadsworth notes that there is no record of Jones communicating prior or subsequent threats, and that Jones has not engaged in violence to others. (Id.) Dr. Wadsworth reports that Jones's threatening behavior is a result of his persecutory beliefs, and concluded:

> [w]hen considering protective historical factors, Mr. Jones does not have a significant history of assaulting or harming others nor does he have a history of engaging in antisocial behavior. He has not been diagnosed as having traits of a personality disorder. Furthermore, he does not have a documented history of substance abuse. He has a history of stable employment since his honorable discharge in 2006. He does not have a history of being exposed to traumatic experiences.

(Dkt. No. 43, p. 7.) Dr. Wadsworth also identified several clinical items that address current difficulties and may increase or decrease Jones' risk of harm to others:

> Jones is aware of his mental health diagnosis, but does not agree with it nor does he show insight into his persecutory beliefs. Nonetheless, he has responded well to medication and evidenced symptom improvement. Specifically, delusions are not readily apparent in conversations; he does not voice grandiose delusions, and is able to speak rationally about this underlying offence. Furthermore, despite his beliefs that he does not have a mental illness, Mr. Jones has been compliant with treatment interventions. While at the FMC his behavior has been stable. He has not incurred any incident reports and is employed in Food Service. He has not evidenced violent ideation or instability.

(Dkt. 43, p. 8.)

Dr. Wadsworth also addressed Jones' risk management, and concluded that he has few identifiable risk factors. Although Jones denied a belief that he requires mental health treatment upon his return to the community, he said "if I have to then I will," in regards to mental health

treatment.

After consideration of all relevant factors, the Risk Assessment Panel and Dr. Wadsworth concluded that Jones' unconditional release would <u>not</u> pose a substantial risk of bodily injury to another person or serious damage to the property of another: "While Mr. Jones' behavior was threatening, records indicate this was an isolated incident and he has not attempted to physically harm another person and there is little evidence to suggest he will attempt to do so." (Dkt. No. 43, p. 9.)

### III. DISCUSSION

The Government is not opposed that Jones be discharged. The issue before the court is whether Jones should be *unconditionally* released from any Government supervision following his release from custody. Section 4243 provides that a person shall be discharged when "his release would no longer create a substantial risk of injury to another person and or serious damage to the property of another," and that a person shall be *conditionally* released when the status described above can only be achieved "under a prescribed regimen of medical, psychiatric or psychological care or treatment." 18 U.S.C. § 4243(f).

The person found not guilty by reason of insanity has the burden of proving that no such substantial risk exists by either clear and convincing evidence or by a preponderance of the evidence, depending upon the nature of the crime of which the person was acquitted. See 18 U.S.C. § 4243(d).

Jones submitted a forensic evaluation that concludes he does not pose a substantial risk of bodily injury to another person or serious damage to the property of others. This conclusion was reached by his treating physician, Dr. Wadsworth, and an independent Risk Assessment Panel–all of whom reviewed all relevant evidence and assessments. The Government did not proffer evidence to the contrary, and did not oppose Jones' request to be unconditionally discharged.

At a hearing on the merits, the undersigned asked Jones what his intentions were after his release. Jones indicated that he will live at his father's residence in Beaumont, Texas, and continue with the medication prescribed by his treating physicians. Jones has resources available to him, including a lump sum income payment from the Coast Guard, possible Social Security disability benefits, and V.A. health benefits. Jones noted that eventually he would consider returning to California, but that he will maintain communication with his attorney to facilitate medical treatment and financial assistance.

The undersigned has reservations as to whether Jones can or will maintain the medication regime that has brought him restored competency, or whether he will slip back into the grasp of Schizophrenia. There are notes in his medical report that Jones denied a need for medical treatment, but that he would comply if ordered to do so. (Dkt. No. 43, p. 8.) Moreover, the undersigned notes that the stress of moving from a controlled medical environment to complete and unconditional release might cause stress and certain undesirable behavioral triggers. However, even assuming *arguendo* that Jones refrains from taking his prescribed medication and the effects of his Schizophrenia return, there is no indication that he will cause injury or serious damage to the property of another.

Jones was committed to a federal medical facility on September 19, 2012, but he denied antipsychotic mediation until sometime after January 13, 2014. During this period, Jones' doctors did not report any episodes of violence. Furthermore, the underlying charge of the instant offense involve threats only–not attempted or actual acts of violence, and his treating physician and an independent Risk Assessment Panel concluded that Jones does not pose a substantial risk of bodily injury to another person or serious damage to the property of another.

## IV. RECOMMENDATION

For the reasons set forth above, the undersigned recommends that unconditional discharge under 18 U.S.C. § 4243(f) constitutes the proper course of action in this case. Furthermore, the only evidence submitted at the hearing compels this conclusion under 18 U.S.C. § 4243(f)(1). There is no evidence before the court justifying conditional release or otherwise. Accordingly, the undersigned recommends that the Defendant, Troy Martin Jones, be unconditionally discharged under 18 U.S.C. § 4243(f).

## V. OBJECTIONS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. Parties are typically allowed fourteen days to file objections. However, considering the ultimate outcome of this matter, the undersigned feels that the objection period should be reduced from fourteen (14) days to seven (7). At the hearing, the parties orally agreed to reduce the objection period from fourteen (14) days to seven (7).

A party's failure to file specific, written objections to the proposed findings of fact and conclusions of law contained in this report bars that party from: (1) entitlement to de novo review by the United States District Judge of the findings of fact and conclusions of law, see Rodriguez v. Bowen, 857 F.2d 275, 276–77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error, of any such findings of fact and conclusions of law accepted by the United States District Judge, see Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, at 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 24th day of November, 2015.

_____
Zack Hawthorn
United States Magistrate Judge